**Richard P. KUNTZ, et al.,**
**Plaintiffs-Appellants,**

**v.**

**Nat J. REESE, et al.,**
**Defendants-Appellees.**

No. 83–2151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1984.

Decided May 13, 1985.

R. Bradford Huss, Hall, Henry, Oliver & McReavy, San Francisco, Cal., for plaintiffs-appellants.

Donn Dimichele, Brian C. Cuff, Ball, Hunt, Hart, Brown & Baerwitz, Los Angeles, Cal., Richard B. Glickman, Rosenman, Colin, Freund, Lewis & Cohen, San Francisco, Cal., for defendants-appellees.

Before TANG and PREGERSON, Circuit Judges, and REAL,* District Judge.

PREGERSON, Circuit Judge:

## INTRODUCTION

This case presents four important questions regarding the scope and application of the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. §§ 1001–1381 (1982).[1] Plaintiffs-appellants, who are retired former employees of defendants-appellees, filed suit in the United States District Court for the Northern District of California and sought recovery for their employers' alleged violations of ERISA and various California laws. The district court dismissed each claim for failure to state a claim upon which relief could be granted. For the reasons expressed below, we reverse these rulings and remand for further proceedings.

## FACTS

Richard Kuntz, Dan Caccavo, Jimmy Humes, John McCord, Gursewak Singh, and Duane White (the Kuntz plaintiffs) worked for the Capitol Metals Companies

---

* Hon. Manuel J. Real, Chief Judge, United States District Court for the Central District of California, sitting by designation.

1. Congress amended ERISA in 1980. *See* Multiemployer Pension Plan Amendments Act of 1980, Pub.L. 96–364, 94 Stat. 1208 (codified in scattered sections of 26 & 29 U.S.C. (1982)).

(the Companies)[2] during various periods between 1970 and 1981. In 1982, the Kuntz plaintiffs filed suit against the Companies, which had employed them and sponsored their pension plan and trust fund, and against the successors-in-interest to Capitol Metals' assets (the Reese defendants),[3] who administer the pension plan.

In short, the Kuntz plaintiffs contend that the Reese defendants lied about the amount of benefits that plaintiffs would get under the plan and failed to comply with ERISA requirements for disclosing pension plan documents.

In the district court, the Kuntz plaintiffs alleged that the Companies and the Reese defendants misrepresented to each Kuntz plaintiff, both at the time he interviewed for his job and afterward, that the Companies would immediately enroll each Kuntz plaintiff in the pension plan. The Reese defendants described the plan as "standard" and "good." Plaintiffs further alleged that, in response to employees' requests for information about the plan, the Companies and the Reese defendants promised to send pertinent documents soon and advised the Kuntz plaintiffs not to worry. According to the original complaint, the pension plan was neither standard nor good; instead, the plan discriminated in favor of the highest-paid workers and failed to provide any coverage to other workers.

The original complaint also alleged that the Companies and the Reese defendants falsely represented that, when a firm called Estell Corp. purchased Capitol Metals Co., the employees would be covered by a new, retroactive pension plan.

The Reese defendants moved to dismiss for lack of subject matter jurisdiction. The court dismissed the second through seventh claims for relief in the original complaint, apparently on the ground that these claims were state law causes of action over which the court could decline to exercise its pendent jurisdiction.

Next, defendants moved to dismiss for failure to state a claim under ERISA, to strike parts of the complaint, and to require plaintiffs to make a more definite statement of the case. The district court granted this motion in part. After striking the Kuntz plaintiffs' prayer for punitive damages and their allegations of misrepresentation, the district court gave plaintiffs 30 days to amend to allege that Kuntz and the others had made written requests for pension plan documents, to specify the dates of purported ERISA disclosure violations, and to identify the plan administrators involved in the misconduct.

Later, the Kuntz plaintiffs filed their first amended complaint. This complaint stated only federal claims under ERISA. The Reese defendants again moved to dismiss each count for failure to state a claim. They argued that the statute of limitations barred the claim and moved to strike as immaterial plaintiffs' fraud and misrepresentation allegations. The court granted the motions in their entirety without leave to amend. The Kuntz plaintiffs then took the appeal now before us.

Finally, after the parties had briefed the substantive issues we outlined above, the Reese defendants moved this court to dismiss for lack of subject matter jurisdiction because the Kuntz plaintiffs did not have standing.

We now take up each disputed matter.

## ANALYSIS

### I. Standing to Sue

According to the Reese defendants, ERISA does not confer standing to sue for breach of fiduciary duty and nondisclosure of pension plan documents on former em-

---

**2.** The Companies include Capitol Metals Co., Inc.; Capitol Metals Enterprises, Inc.; Capitol Metals Co., Inc., Northern California Division; Gilbraltar Metals Corp.; and Metal Transport, Inc.

**3.** The Reese defendants include Nat Reese, Daniel Eget, Sammy Narens, and Danat Investments. Reese is the pension plan administrator. For brevity, we often refer to both the Companies and the Reese defendants as "the Reese defendants."

ployees whose vested pension plan benefits have already been distributed. Defendants reason that the Kuntz plaintiffs, as persons who have already received a distribution, are no longer "participant[s]" under 29 U.S.C. § 1002(7) who may sue to collect their fair share of the trust fund.

Because both the case law and ERISA's legislative history undermine these arguments, we reject defendants' novel interpretation of § 1002(7).

### A. Requirements of § 1002(7)

■ Determining whether plaintiffs have standing is a "threshold question in every federal case [that] determin[es] the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). Therefore, we must decide whether ERISA authorizes the Kuntz plaintiffs to bring suit before we may exercise subject matter jurisdiction over their claims. *See Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc.,* 721 F.2d 654, 655 (9th Cir.1983).

The Kuntz plaintiffs bring their ERISA action pursuant to 29 U.S.C. §§ 1132(a)(1)(A) & 1132(a)(2). Section 1132(a)(1)(A) authorizes a "participant or beneficiary" to bring a civil action against the plan administrator to recover statutory damages for violating the duty to disclose plan documents under § 1132(c). Section 1132(a)(2) authorizes either the Secretary of Labor or a "participant, beneficiary or fiduciary" to bring a civil action for relief from breaches of fiduciary duty that the plan administrator has committed in violation of § 1109(a). The Reese defendants argue that these parts of § 1132 do not permit the Kuntz plaintiffs to bring suit, and therefore, that we lack jurisdiction to hear this case.

The crux of the dispute is whether the Kuntz plaintiffs qualify as "participant[s]" within the meaning of ERISA. As defined in § 1002(7),

[t]he term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, *who is or may become eligible to receive a benefit of any type* from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7) (emphasis added). The Reese defendants contend that the Kuntz plaintiffs are not participants because, as former employees whose vested benefits under the plan have already been distributed in a lump sum, the Kuntz plaintiffs were not "eligible to receive a benefit," or likely to become eligible, at the time they filed suit.[4]

### B. The Meaning of Freeman

Relying primarily on *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc.,* 721 F.2d 654 (9th Cir.1983), the Reese defendants argue that, as to former employees, only those with presently vested benefits are "participants" within the meaning of ERISA. They also contend that the Kuntz plaintiffs' action to recover damages for misrepresentation concerning a pension plan does not make them "eligible for a benefit" under the plan.

To support their interpretation of *Freeman,* the Reese defendants offer two arguments.

First, the Reese defendants read *Freeman* as holding that only current employees with presently vested benefits are participants. They rely on the fact that our court in *Freeman* cited *Nugent v. Jesuit High School of New Orleans,* 625 F.2d 1285 (5th Cir.1980), which held that some of the language defining participants—specifically, the phrase "may become eligible to receive a benefit"—applies solely to current employees. *See Freeman,* 721 F.2d at 655 (citing *Nugent,* 625 F.2d at 1287).

---

**4.** The Kuntz plaintiffs do not dispute that standing is determined at the time that plaintiffs file suit. *See Freeman v. Jacques Orthopaedic &*

*Joint Implant Surgery Medical Group, Inc.,* 721 F.2d 654, 655 (9th Cir.1983).

But *Freeman*'s citation of *Nugent* does not dispose of the standing issue in the case before us. In *Freeman,* we merely stated the fact that the Fifth Circuit "has held that ERISA's 'may become eligible' language defining who is a participant applies only to current employees." *Freeman,* 721 F.2d at 655. We did not rely on this statement to support our holding in *Freeman,* nor did we express any agreement or disagreement with it. Therefore, the Reese defendants' first argument regarding *Freeman* is inapposite.

Moreover, *Freeman* is factually distinguishable from the present case. Plaintiff in *Freeman* had not at any time possessed *vested* benefits or maintained a fiduciary relationship with the employer and plan administrator. By contrast, the Kuntz plaintiffs allege that they accrued vested benefits under the pension plan, and thereby enjoyed a fiduciary relationship with the employer and plan administrator. In *Freeman,* a former employee, Freeman, brought an action pursuant to § 1132(a)(1)(B) for "an accounting and distribution of benefits claimed owing under [his] pension and profit sharing plan." *Freeman,* 721 F.2d at 655. Unlike the Kuntz plaintiffs, Freeman had waived participation in the plan, but then changed his mind and sued for benefits. Freeman claimed that the employer had misled him about the cost of participation. We held that Freeman was not a "participant" authorized to sue because "[n]othing Freeman can do will make him eligible for a benefit, since he is no longer employed by the defendants." *Id.* We went on to note that "[e]ven if Freeman were to win his claim ... he would not become a 'participant.'" *Id.*

■ Unlike the plaintiff in *Freeman,* the Kuntz plaintiffs have established a fiduciary relationship with the pension fund administrator. The Kuntz plaintiffs have neither waived participation in the plan nor absolved the pension fund administrator of his fiduciary duty to distribute the benefits fairly and accurately. In light of these facts, we think the real holding of *Free-*

*man* is that a fiduciary relationship is crucial to § 1002(7)'s definition of who is a participant under ERISA. Because no fiduciary relationship exists toward potential, rather than past, participants, a plaintiff (like the plaintiff in *Freeman* ) who has never signed up for a pension fund does not have standing to sue for misrepresentation and breach of fiduciary duty. Nothing in *Freeman,* however, precludes the Kuntz plaintiffs, who signed up for the pension fund and accrued vested benefits under it, from going forward with this lawsuit.

■ Second, the Reese defendants read *Freeman* as holding that a claim for damages due to misrepresentation does not make a former employee "eligible to receive a benefit" within the meaning of § 1002(7). In *Freeman,* we ruled that plaintiff's claim that he was misled about the cost of participation, and consequently did not enroll in the pension plan, constituted a tort claim for damages, and therefore was not "a *benefit* of any type" within the meaning of § 1002(7). *Freeman,* 721 F.2d at 656 (emphasis in *Freeman* ). But we did not base our decision in *Freeman* on the fact that, as the Reese defendants argue, Freeman alleged misrepresentation. Instead, we based our decision in *Freeman* on the fact that plaintiff's allegations, even if true, did not state a claim for eligibility for *benefits* under the pension plan—simply because plaintiff had never enrolled in the plan, and thus had never acquired a vested benefit in the plan. We thought that Freeman really sought a "declaration that his waiver was invalid." *Id.* at 655. We reasoned that, even if Freeman had won his claim, he could not have become a "participant" because he had never enrolled in the plan. Instead, we said, "If anything, he would receive specific damages equal to a benefit share under a plan. In other words, Freeman would receive as damages what a participant would receive as a benefit under the plan. . . . He would not, however, become enrolled in the plan and become a participant." *Id.* at 655–56 (citations omitted).

*Freeman,* then, does *not* hold that a former employee's claims for damages due to nondisclosure of plan documents are not "benefit[s] of any type" under § 1002(7).[5]

Furthermore, we believe that the Reese defendants' broad, two-pronged interpretation of *Freeman* conflicts with our holding in *Bricklayers' Health & Welfare Trust Fund of Inland Empire v. Brick Masons' Health & Welfare Trust Fund,* 656 F.2d 1387 (9th Cir.1981). In *Bricklayers' Fund,* we found that former members of an employee organization who did not have vested benefits nonetheless had standing to sue their previous pension plan to recover employer contributions that they alleged the former employer owed to their current pension plan. We emphasized that the participant merely needed to show eligibility for a benefit "of any type." *Bricklayers' Fund,* 656 F.2d at 1391 (quoting § 1002(7)) (emphasis omitted). We concluded that "[t]he former participants allege that they are entitled to receive certain benefits from the Brick Masons' Fund; they are therefore participants for jurisdictional purposes." *Id.*

### C. *Legislative History*

Although neither the statutory language defining who is a participant under ERISA nor our case law interpreting the statute denies the Kuntz plaintiffs standing, neither set of authorities states precisely that they have standing, either. Therefore, we turn to the legislative history to shed light on Congress' intent in this regard.

The legislative history indicates that Congress intended the federal courts to effectuate the remedial purposes of the statute by construing the jurisdictional requirements broadly. Congress declared that the policy of the Act is to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

In various reports, Congress also emphasized the liberal remedial provisions of the Act:

> The enforcement provisions have been designed specifically to provide both the Secretary [of Labor] and participants and beneficiaries with broad remedies for redressing or preventing violations of the [Act].... The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.

S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4838, 4871.

A House of Representatives report made an even stronger statement:

> The Committee recognizes the *absolute need that safeguards for plan participants be sufficiently adequate and effective* to prevent the numerous inequities to workers under plans which have resulted in tragic hardship to so many.

H.R.Rep. No. 533, 93d Cong. 2d Sess. (emphasis added), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4647.

---

**5.** The Kuntz plaintiffs apparently allege that the Reese defendants not only misled them as to the amount of benefits due under the plan, but also induced some of the Kuntz plaintiffs to believe that they were participating in the plan before the Reese defendants actually enrolled them.

Again, the Reese defendants contend that *Freeman* precludes these claims. Again, we disagree.

The claim that the Kuntz plaintiffs were misled as to the amount of benefits is cognizable because, unlike the plaintiff in *Freeman,* plaintiffs here had a fiduciary relationship with the plan administrator. Moreover, the claim that the Reese defendants induced plaintiffs prematurely to believe that they had been enrolled in the plan is also cognizable because the inducement, if proved, constitutes a form of fraud infecting the fiduciary relationship. The Kuntz plaintiffs contend that they were misled into believing that a fiduciary relationship under ERISA existed from the time that their employer hired them. In *Freeman,* however, plaintiff was aware from the moment he was informed of the plan that a fiduciary relationship between him and the plan administrator did not exist; he knowingly signed a waiver of participation in the plan.

■ In light of this legislative history, we think that the Reese defendants' construction of ERISA's standing provisions is unacceptable. Under the Reese defendants' view of the statute, an employer who is also the plan administrator could defeat a former employee's right to sue for breach of fiduciary duty and for failure to distribute benefits simply by distributing whatever lump sum he wishes and then terminating benefits before his former employee can file suit. Congress, however, did not intend this type of inequitable result.

■ In response, the Reese defendants suggest that the statute, by prohibiting retaliatory discharges under 29 U.S.C. § 1140, adequately prevents employer abuse. We disagree. The statute does not apply in cases, such as the one before us, in which the employees are not discharged. If we adopted the Reese defendants' construction of who has standing under ERISA, an employer who is also the sole administrator of a pension plan could commit serious breaches of fiduciary duty, terminate the plan, distribute the vested benefits, and thereby immunize himself from suit by former employees. These are the very types of "jurisdictional and procedural obstacles" that have "hampered effective enforcement of fiduciary responsibilities." S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4838, 4871; *see, e.g., Hager v. Veco Corp.*, 1 Empl.Ben.Cas. (BNA) 1827, 1829 (N.D.Ill.1979) (permitting employer to defeat former employees' "participant" status by distributing vested benefits would contravene congressional intent).

■ We do not believe that Congress drafted the statute to produce such an arbitrary result. Therefore, we conclude that Congress did not intend the term "participant" to be interpreted so narrowly that former employees are denied standing under ERISA to challenge the correctness of the amount of vested benefits that have been distributed to them.

Having concluded that the Kuntz plaintiffs may sue under ERISA, we proceed to the merits.

## II. Preemption and State Law Claims

In their original complaint, the Kuntz plaintiffs alleged seven claims for relief arising under both California law and ERISA. The district court dismissed six claims for lack of subject matter jurisdiction. The court apparently concluded that all of the claims arising under California law were state law claims over which it could decline to exercise its pendent jurisdiction. On appeal, the Kuntz plaintiffs contend that the district court should have exercised its pendent jurisdiction and decided these claims.

But ERISA's broad preemption clause, *see* 29 U.S.C. § 1144(a), together with its exclusive jurisdiction provision, *see id.* § 1132(e)(1),[6] has eliminated state court jurisdiction over actions related to most employee benefit plans. Therefore, if ERISA preempts the state law claims that plaintiffs assert, we need not decide the question of pendent jurisdiction. In the case before us, the state issues include whether ERISA preempts the Kuntz plaintiffs' California law claim for misrepresentation, and, if so, whether ERISA provides a claim for relief.

### A. *Preemption*

■ Congress enacted ERISA as a comprehensive legislative scheme to resolve problems in private employee benefit plans and to provide security, stability, and uniformity in this area of the law. 29 U.S.C. § 1001(a). To establish national uniformity, Congress included a broad preemption clause providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employ-

---

**6.** Section 1132(e)(1) grants federal district courts exclusive jurisdiction over all ERISA actions, except for a plan participant or beneficiary's action to recover benefits, to enforce his rights, or to clarify his right to future benefits under the terms of the plan. Thus, actions for relief under § 1109(a), and for the statutory penalty for nondisclosure under § 1132(c), are within the exclusive jurisdiction of the federal courts.

ee benefit plan." 29 U.S.C. § 1144(a).[7] The legislative history of ERISA indicates that Congress wanted the federal courts to construe the preemption clause broadly. Congress expressly rejected a more limited preemption clause that would have applied only to state laws relating to the specific subjects that ERISA covers. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98–99, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983). According to one of the bill's Senate sponsors:

> [T]he substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

120 Cong.Rec. 29,933 (1974) (statement of Senator Williams).

Citing this legislative history, the Supreme Court has broadly defined a law that "relate[s] to" an employee benefit plan as a law that "has a connection with or reference to such a plan." *Shaw*, 463 U.S. at ——, 103 S.Ct. at 2900. Although some of the claims for relief[8] that the district court initially dismissed were pleaded in terms of California statutory and breach of contract law, all the claims relate to the same alleged harm: the damage that pension plan fiduciaries caused when they misrepresented the fact of the plan's coverage and the quality of that coverage. Consequently, the issue before us is whether a state law claim for a fiduciary's misrepresentation "relate[s] to" an employee benefit plan in a manner that ERISA would preempt. This is an issue of first impression in our court.

In *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482 (9th Cir.1983), *cert. granted*, —— U.S. ——, 105 S.Ct. 81, 83 L.Ed.2d 29 (1984),[9] we held that ERISA preempts state law claims for negligent and intentional infliction of emotional distress arising from the handling of a disability benefit claim.[10] *Russell*, 722 F.2d at 487–88. No other Ninth Circuit case has decided whether ERISA preempts state tort causes of action involving pension

---

**7.** ERISA contains several exceptions to the preemption provision in § 1144(a), none of which apply in this case. *See* 29 U.S.C. § 1144(b).

**8.** The district court dismissed the following six claims:

(1) An action under Cal.Labor Code § 972 (West 1971), which concerns an employer's knowing false misrepresentation that induces a prospective employee to change location, based on the allegation that the Reese defendants misrepresented the pension plan to plaintiffs at their job interviews.

(2) An action for willful fraud, based on the allegation that the Reese defendants knowingly misrepresented the fact and quality of coverage under the plan.

(3) Negligent misrepresentation, based on the same factual allegations in (2).

(4) An action for breach of fiduciary duty and constructive fraud, based on the allegation that a confidential relationship existed and that the Reese defendants' misrepresentations breached their duties under this relationship.

(5) An action for breach of contract, based on the allegation that the Reese defendants breached a clause of the pension plan

agreement obligating the plan committee to act in compliance with ERISA requirements.

(6) An action for breach of employment agreement, based on the allegation that the Reese defendants, as part of the Kuntz plaintiffs' compensation, promised a "good" pension plan but failed to deliver one.

**9.** The Supreme Court has granted certiorari only on the question whether ERISA permits a court to award punitive damages against a plan fiduciary who improperly or untimely processes benefit claims. *See* —— U.S. ——, 105 S.Ct. 1838, 84 L.Ed.2d 139. We take up a related question in Section IV. *See infra* p. 938.

**10.** We further held in *Russell* that no parallel federal claim for relief exists under ERISA. *Russell v. Massachusetts Life Ins. Co.*, 722 F.2d 482, 490 (9th Cir.1983), *cert. granted*, —— U.S. ——, 105 S.Ct. 81, 83 L.Ed.2d 29 (1984). And although we held that ERISA also preempted Russell's claim for compensatory and punitive damages for improper processing of her disability claim, we nonetheless found that her contention did state a federal claim under ERISA. 722 F.2d at 490.

plans that ERISA covers.[11] Nonetheless, we find the Kuntz plaintiffs' action for misrepresentation logically indistinguishable from the state law tort claim that we confronted in *Russell*. Both claims have "a connection with or reference to" a benefits plan that ERISA covers, and thus come within the preemption provision. *See Shaw*, 463 U.S. at ——, 103 S.Ct. at 2900; *Russell*, 722 F.2d at 487–88; *see also Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215–16 (8th Cir.) (holding state common law action for tortious interference with contract preempted), *cert. denied*, 454 U.S. 968, 1084, 102 S.Ct. 512, 641, 70 L.Ed.2d 384, 619 (1981). Therefore, we hold that ERISA preempts the Kuntz plaintiffs' state law claims.

### B. *ERISA Claim for Relief*

■ Although the Kuntz plaintiffs' California law claim for misrepresentation is preempted, we must still decide whether the allegations state a *federal* claim for relief under ERISA. This too is an issue of first impression in our court.[12]

We think that the alleged misrepresentations, if proved, would constitute a breach of the type of fiduciary duty that Congress intended ERISA to govern. Under § 1104(a), a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). The actions that the Reese defendants allegedly took would breach this duty. Because "[i]t would be anomolous if Congress eliminated the protections offered by state law without pro-

viding comparable federal protections," *Russell*, 722 F.2d at 488, we hold that ERISA provides a federal cause of action to consider allegations that a pension plan fiduciary has misrepresented the fact and/or quality of plan coverage.

### III. Statute of Limitations Under ERISA

The district court dismissed the Kuntz plaintiffs' amended complaint, which asserted only ERISA claims, because the statute of limitations had run. Apparently, the court adopted the Reese defendants' argument that ERISA did not provide a limitations period for the Kuntz plaintiffs' claim, and, therefore, the analogous California statute of limitations governed. The district court held that the three-year limitation in Cal.Civ.Proc.Code § 338(1) (West 1982) precluded the Kuntz plaintiffs' compensatory damage claim. The court also held that the one-year limitation in Cal.Civ. Proc.Code § 340(1) (West 1982) barred their prayer for statutory penalties under ERISA. The Kuntz plaintiffs now assert that the district court erred when it failed to apply the six-year limitations period that Congress provided in § 1113 for actions arising out of a breach of fiduciary duty under ERISA.

On appeal, the controversy over the statute of limitations provision in § 1113 raises three separate issues: first, whether the question is properly before us at all; second, whether the limitations period in § 1113 even applies to actions brought under § 1104(a) (fiduciary's duty to act solely in interest of participants) and § 1109(a) (fiduciary's personal liability for breach of fiduciary duty); and third, whether § 1113,

11. We have decided, however, whether ERISA preempts various state regulatory schemes. *See, e.g., Employee Benefits Comm. of Retirement Sys. of Hawaiian Tel. Co. v. Pasco*, 679 F.2d 1319 (9th Cir.1982) (holding workers' compensation statute preempted); *Carpenters Pension Trust for S. Calif. v. Kronschnabel*, 632 F.2d 745 (9th Cir.1980) (holding community property laws not preempted), *cert. denied*, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981). *But cf. Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388 (E.D.Cal.1981) (holding state cause of action for willful fraud not preempted).

12. A district court in our circuit, however, has decided that an action for misrepresentation does not state a claim under ERISA. *See Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388, 391–392 (E.D.Cal.1981). *But see Ogden v. Michigan Bell Tel. Co.*, 571 F.Supp. 520, 523 (E.D.Mich.1983) (holding that action for misrepresentation does state claim under ERISA); *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286, 1293 (N.D.Ill.1983) (casting doubt on validity of *Provience*).

if applicable, bars the Kuntz plaintiffs' claims.

### A. *Propriety of Appeal Regarding § 1113*

The Reese defendants contend that the Kuntz plaintiffs did not properly raise in the district court the issue whether the federal statute of limitations set out in § 1113 applies to this case. Pointing to the papers filed in the district court, the Reese defendants note the absence of this argument in the Kuntz plaintiffs' response to the Reese defendants' motion to dismiss on the statute of limitations question.

 Generally, a party may not raise new issues on appeal. *Taylor v. Sentry Life Insurance Co.*, 729 F.2d 652, 655–56 (9th Cir.1984) (per curiam). Nonetheless, when the issue involves a purely legal matter, such as a question of statutory construction that is central to the case and important to the public, we may exercise our discretion to hear it. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir.1984). Due to the importance of this question of law, and in light of the fact that the parties have presented an otherwise fully developed record to us on appeal, *see In re Howell*, 731 F.2d 624, 627 (9th Cir.), *cert. denied*, ── U.S. ──, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984), we exercise our discretion to entertain and decide this issue even though the record does not conclusively demonstrate that the Kuntz plaintiffs raised this issue in the first instance before the district court.

### B. *Applicability of § 1113 to Claims Under §§ 1104(a) and 1109(a)*

Section 1113 provides that "[n]o action may be commenced ... with respect to a fiduciary's breach of any responsibility, duty, or obligation *under this part*" after the earlier of six years from the breach, or three years from the date plaintiff gained actual knowledge of the breach. 29 U.S.C. § 1113(a) (emphasis added). The statute makes an exception in cases of fraud or concealment, for which it provides a limitations period of six years from the date of discovery of the breach. *Id.*

The "part" that § 1113 refers to is Part 4 of Subchapter I, Subtitle B of the statute. *See* 29 U.S.C. §§ 1101–1114 (enacting rules of fiduciary responsibility). ERISA provides no statute of limitations for actions brought to attack violations of other parts of ERISA.

 When a federal statute creates a claim for relief, but does not specify a period of limitations, the district court should apply the most analogous state statute of limitations. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). But the Kuntz plaintiffs assert that the limitations period in § 1113 should apply because they may bring their ERISA claim for nondisclosure of plan documents as an action for breach of fiduciary duty under § 1104(a) and § 1109(a), which are found in Part 4. Section 1104(a)(1) imposes a general obligation on a plan fiduciary to act solely in the interest of the participants and beneficiaries. Section 1109(a), a companion provision, holds a fiduciary personally liable for damages that he causes by breaching his fiduciary duty. The Kuntz plaintiffs argue that a fiduciary's nondisclosure of plan documents constitutes a breach of fiduciary duty under these sections—and therefore, that the limitations period in § 1113, rather than the one under the analogous California statute, should apply.

Section 1113 applies by its terms to actions for breach of fiduciary duty that arise under *both* § 1104(a) and § 1109(a). Section 1109(a) applies to a breach of any of the "responsibilities, obligations, or duties" that Subchapter I of ERISA imposes on fiduciaries. *See* 29 U.S.C. § 1109(a). Because the disclosure requirements at issue in this case, *see* 29 U.S.C. §§ 1021–1025, appear in Subchapter I, we think that failure to comply with §§ 1021–1025 is actionable under § 1109(a). But no court has ruled on the particular question whether a fiduciary's violation of his duty to disclose plan documents, *see* 29 U.S.C. § 1024(b), is a breach of fiduciary duty that creates

liability under § 1109(a) to which the statute of limitations in § 1113 applies.

The Reese defendants contend that the obligations and duties of the fiduciary to which § 1109(a) refers are limited to the management of fund assets and financial transactions, which ERISA discusses in 29 U.S.C. §§ 1104–1108. Recently, however, we rejected this position. In *Russell*, we found that the mishandling of a claim for disability benefits constitutes a breach of fiduciary duty under ERISA and gives rise to a cause of action for the relief provided in § 1109(a). *See Russell*, 722 F.2d at 488–89. In so holding, we relied on "Congress' express policy of imposing 'strict fiduciary obligations upon those who exercise management or control over the assets or *administration* of an employee pension or welfare plan.'" *Russell*, 722 F.2d at 488 (emphasis in *Russell*) (quoting 1974 U.S. Code Cong. & Ad.News 5177, 5177–78 (statement of Senator Williams)).

The Kuntz plaintiffs charge the Reese defendants with breach of the duty to disclose pension plan documents under 29 U.S.C. §§ 1021–1025 and 29 C.F.R. § 2520.-101–1 to .104b–30 (1983). We conclude that the nature of this duty to disclose pension plan documents is analogous to the duty to process claims fairly and diligently under § 1133 and § 1135, which duty we found breached in *Russell*.

The legislative history behind the disclosure provisions and sanctions provided in § 1132(c) does not say conclusively whether Congress intended the breach of a nondisclosure provision to state a claim for relief under § 1109(a), to which the statute of limitations in § 1113 would apply. In the absence of a plain statement of congressional intent regarding this issue, the Kuntz plaintiffs argue that we should follow Congress' expressed general intent to enact liberal remedies for breaches of fiduciary duties under ERISA. *See Varsic v. United States District Court*, 607 F.2d 245, 247 (9th Cir.1979).

We agree with the Kuntz plaintiffs. As we have already noted, *see supra* p. 932, Congress intended "to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities...." S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4838, 4871. In light of this general intent, we conclude that the application of the shorter California limitations periods to this specific case is the type of jurisdictional or procedural obstacle to enforcement that Congress intended to eliminate when it enacted ERISA.

■ We hold that a fiduciary's failure to disclose plan documents, as required in §§ 1021–1025, creates fiduciary liability under § 1109(a)—as well as under the companion provision in § 1104(a)—that triggers the six-year limitations period prescribed in § 1113.

### C. *Effect of § 1113 on This Case*

■ Applying the limitations period of § 1113 to the record before us, we find that the Kuntz plaintiffs' ERISA claims are not time-barred. Because the Kuntz plaintiffs have pleaded fraud and concealment, the six-year period would apply to this action commencing with the date that the Kuntz plaintiffs discovered the alleged breaches of duty.

A district court must deny the motion to dismiss for failure to state a claim unless it is certain that plaintiff would be entitled to no relief under any set of facts that he might prove. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir.1983). Because the pleadings do not plainly indicate when the employees first became aware of the fraud in the Reese defendants' representations that the plan documents would be forthcoming, we conclude that the district court erred in dismissing the claims as untimely. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677,

682 (9th Cir.1980).[13] Consequently, we hold that the limitations period in § 1113 does not bar the Kuntz plaintiffs' ERISA claims.

## IV. Punitive Damages

The Kuntz plaintiffs assert that the district court committed another error when it granted the Reese defendants' motion to strike the claim for punitive damages. The Reese defendants contend that ERISA does not permit a party to recover punitive damages.

■ We have twice had occasion to consider this question. We held then, as we do now, that Congress intended to permit punitive damages in appropriate cases, and that the punitive damages award is appropriate when a fiduciary has breached his duties. *Winterrowd v. David Freedman & Co.*, 724 F.2d 823, 826 (9th Cir.1984); *Russell*, 722 F.2d at 490–92.

■ The Reese defendants, however, contend that the issue is not so simple in this case. According to the Reese defendants, punitive damages are not available for failure to disclose plan documents because Congress has already provided a statutory penalty provision. *See* 29 U.S.C. § 1132(c). Under § 1132(c), the district court, in its discretion, may award an amount of up to $100 per day for breach of this duty, plus "such other relief as it deems proper." *Id.* Moreover, the district court may hold the plan administrator personally liable under § 1109(a) for "such … equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

The Reese defendants argue that the penalty provision in § 1132(c) precludes an additional award of punitive damages. But in *Winterrowd*, we held that the existence of a punitive double interest provision in ERISA for actions to recover an employer's unpaid benefit contributions did not preclude the district court from awarding punitive damages in light of the fact that plaintiffs had established aggravated conduct. *Winterrowd*, 724 F.2d at 826–27. We did note that a district court would rarely award punitive damages in actions to recover an employer's contributions, because the double interest provision would usually deter misconduct and thereby fulfill the purpose of awarding punitive damages. *Id.*

We conclude that the statutory penalty in § 1132(c) is indistinguishable from the one in *Winterrowd*. Therefore, the district court erred in striking the Kuntz plaintiffs' prayer for punitive damages.[14]

## CONCLUSION

Recognizing the increasing growth, scope, and complexity of private employee benefit plans throughout the United States, and citing the inadequacy of the existing standards governing these plans, Congress

---

**13.** The failure to allege a written request for plan documents is not fatal to the Kuntz plaintiffs' claim, at least under 29 U.S.C. §§ 1022(a)(1) and 1024(b)(1), which do not refer to written requests.

**14.** Before the district court ruled on the amended complaint, the Kuntz plaintiffs agreed by stipulation to extend defendant Estell Corp.'s time to respond to the plaintiffs' complaint and interrogatories. The Kuntz plaintiffs also stipulated that they would voluntarily dismiss Estell in accordance with any order of the court that favored the other defendants. The Kuntz plaintiffs, therefore, stipulated to dismissing Estell with prejudice only after the court dismissed the action as to the Reese defendants and the Companies.

Taking the position that the Kuntz plaintiffs' stipulation completely terminated its involvement in the case, Estell now contends that it is not a proper party to this appeal.

This argument is meritless. The parties plainly intended to put Estell Corporation in the same position as the other defendants with regard to this litigation. As a result, our decision to reverse the judgment as to the Companies and the Reese defendants should have the same effect on Estell.

decided to enact a comprehensive legislative scheme to remedy the problems and to provide security, stability, and uniformity in this important area of law. *Russell,* 722 F.2d at 487 (relying on 29 U.S.C. § 1001(a)). This comprehensive legislative scheme is codified in ERISA. Because Congress intended to provide more adequate redress to participants who allege injuries as a result of a fiduciary's breach of his obligations under the statute, *see Russell,* 722 F.2d at 490, we REVERSE the judgment and REMAND for further proceedings consistent with this opinion.[15]

REAL, District Judge, dissenting:

I dissent.

The majority's attempt to turn a general admonition to interpret the provisions of ERISA broadly to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries ... by providing for appropriate remedies, sanctions, and ready access to the Federal courts," 29 U.S.C. § 1001(b), into a definition of "participant," falls short of the mark. "Participant" is defined in clear language in § 1002(7) as "any employee or former employee of an employer, or any member or former member of an employee organization *who is* or *may become* eligible to receive a benefit of any type ..." (emphasis (emphasis added). No plaintiff here is an employee or former employee "who is or may become eligible to receive a benefit of any type." That definition speaks in present or future eligibility language. Plaintiffs' benefits were already *vested* and *distributed* to them before they brought suit. The plaintiffs cannot therefore qualify as "participants" authorized to bring suit, either under 29 U.S.C. § 1132(a)(1)(A) or § 1132(a)(2). *See*

*Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc.,* 721 F.2d 654 (9th Cir.1983); *Nugent v. Jesuit High School of New Orleans,* 625 F.2d 1285 (5th Cir.1980). We are therefore without jurisdiction and I would grant defendants' motion to dismiss the appeal and remand to the District Court to permit that court to dismiss for want of subject matter jurisdiction.

---

**15.** Pursuant to 29 U.S.C. § 1132(g), both sets of parties *request attorney's fees* on appeal. We decline to review their requests at this time.

Instead, we will consider the matter upon a properly-supported application. Meanwhile, the mandate shall issue according to our rules.