Lecia L. SHORTER, Plaintiff–
Appellant,

v.

METROPOLITAN LIFE INSURANCE
COMPANY; Claudia Sterling, M.D.;
LCC International Group Benefit
Plan; and Does 3 through 10, Defen-
dants–Appellees.

No. 04–57022.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 30, 2006.*

Filed Jan. 5, 2007.

---

* This panel unanimously finds this case suit-
able for decision without oral argument.

Fed. R.App. P. 34(a)(2).

Lecia L. Shorter, Beverly Hills, CA, pro se.

Louis H. Dehaas, Esq., Christopher Wright, Esq., La Follette, Johnson, De Hass, Brent M. Finch, Esq., Eric R. McDonough, Esq., Sayfarth & Shaw, LLP, Los Angele, CA, for Defendants–Appellees.

Before: GRABER, WARDLAW, and RAWLINSON, Circuit Judges.

MEMORANDUM **

Plaintiff Lecia L. Shorter appeals the district court's judgment, entered in favor of Defendants Metropolitan Life Insurance Company ("MetLife") and LCC International Group Benefit Plan ("LCC"), after a bench trial, on an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiff also appeals the district court's dismissal of additional claims against Defendants MetLife, LCC, and Claudia Sterling, M.D., under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and under various state law theories. We affirm.

1. The district court correctly reviewed MetLife's actions under the ERISA-governed disability insurance plan for abuse of discretion. That plan unambiguously confers discretion on the plan administrator and fiduciary and thereby mandates abuse of discretion review. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir.2006) (en banc) (holding that "abuse of discretion review [applies] whenever an ERISA plan grants discretion to the plan administrator").

2. The district court correctly held that MetLife's denial of long-term disability benefits to Plaintiff was not an abuse of discretion.[1] Although the structural conflict of interest inherent in MetLife's dual roles as funding source and fiduciary of the plan must be " 'weighed as a factor,' " *id.* at 969 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)), other factors in this case outweigh that concern. Before deciding to deny long term disability benefits, MetLife had

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. In hindsight, the district court did err in relying on a line of cases that we overruled in *Abatie*. Remand to the district court is not warranted here, however, because the district court explicitly held, in the alternative, that it would reach the same conclusion under de novo review. Because de novo review is a more searching review than the inquiry mandated by *Abatie*, remanding to the district court is unnecessary. *See, e.g., NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (stating that remand is inappropriate when it "would be an idle and useless formality").

Relying on *Abatie*, Plaintiff contends that "additional evidence is required before the district court can fairly review MetLife's decision to terminate Plaintiff's benefits." (Emphasis omitted.) Specifically, Plaintiff contends that the district court "needs a current MRI, an independent functional capacity evaluation, an on-site job analysis, an occupational analysis, an evaluation of the propriety of job modifications/accommodations suggested by the IME and information from Plaintiff's doctor regarding her subjective complaints." Plaintiff misreads *Abatie*. Under abuse of discretion review, "a district court may review only the administrative record when considering whether the plan administrator abused its discretion." *Abatie*, 458 F.3d at 970. The district court may consider evidence outside the record, but that evidence must be related to the existence and extent of a conflict of interest. *Id.* The evidence sought by Plaintiff relates only to "the decision on the merits, [which] must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Id.*

granted full disability benefits to Plaintiff for three years.[2] *See id.* at 968 (noting that the "level of skepticism" may be low when "a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history").

MetLife denied disability benefits because ongoing medical supervision was not documented and because the medical evidence did not demonstrate restrictions that prevented Plaintiff from working. Those reasons are supported amply by the record. *See id.* at 969 (noting that a conflict should be a greater factor if the denial is "against the weight of evidence in the record"). For example, there is evidence of only one visit to a doctor for the nine-month period preceding the denial of benefits. There is no evidence that Plaintiff could not perform her job in a manner consistent with her medical limitations—that is, by standing or walking every two hours instead of sitting continuously. Indeed, MetLife's determination that Plaintiff could perform her job despite her sitting limitations was supported by the conclusions of two independent medical examiners.

■ 3. Plaintiff's alleged entitlement under the plan to certain financial increases in her monthly disability payments is factually unsupported. The district court did not err in finding that the plan's "indexed predisability earnings" calculation

was irrelevant, because it is undisputed that Plaintiff has not worked since becoming disabled. The plan refers to "indexed predisability earnings" only in the context of those who are working, and testimony from a MetLife employee confirmed this understanding. Similarly, the undisputed evidence demonstrates that Plaintiff did not participate in a rehabilitation program approved by MetLife, as required by the terms of the plan.

■ 4. The district court correctly held that MetLife, as a plan *fiduciary* and not a plan *administrator,* cannot be held liable under 29 U.S.C. § 1132(c) for failure to provide plan documents in a timely manner, because that provision applies only to the plan *administrator.*[3] *See* 29 U.S.C. § 1132(c)(1) (holding liable "[a]ny *administrator*" who fails to provide documents in a timely manner (emphasis added)); *Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 299–300 (9th Cir.1989) (construing § 1132(c) strictly to apply to the "plan administrator," as defined at 29 U.S.C. § 1002(16)).

■ 5. The district court did not err in dismissing Plaintiff's RICO claim against MetLife pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The enterprise alleged in Plaintiff's complaint is MetLife's Disability Unit, a division of MetLife, and Plaintiff therefore has not alleged a RICO enterprise separate from the RICO defendant. *See Sever v.*

---

**2.** As part of this determination in Plaintiff's favor, MetLife had found that Plaintiff did not have a preexisting condition, despite substantial evidence that her back pain was caused by a car accident occurring two years before she attained eligibility under the plan.

**3.** Plaintiff concedes this limitation but attempts to rely on another Ninth Circuit case that gave a broader interpretation to § 1132(c). That case was subsequently vacated and is therefore no longer good law. *Kuntz v. Reese,* 760 F.2d 926 (9th Cir.1985),

*vacated by Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986) (per curiam).

Plaintiff also attempts to rescue her claim under § 1132(a)(3)(B), which allows equitable relief against plan fiduciaries. But that provision is not alleged in Plaintiff's complaint. Nor would that section permit monetary relief. *See FMC Med. Plan v. Owens,* 122 F.3d 1258, 1262 (9th Cir.1997) (limiting recovery under § 1132(a)(3)(B) to the traditional equitable remedies of injunction, mandamus, and restitution).

*Alaska Pulp Corp.,* 978 F.2d 1529, 1534 (9th Cir.1992) ("[A] corporate defendant cannot be both the RICO person and the RICO enterprise[.]").[4]

■■■ 6. Finally, the district court did not err in dismissing Plaintiff's state law claims for fraud and intentional interference with contractual relations. ERISA explicitly preempts all state law causes of action that "relate to" the plan. *See* 29 U.S.C. § 1144(a) (providing that ERISA claims "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [under ERISA]"). *See also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (interpreting the preemptive effect of § 1144(a) broadly). We have held that claims similar to Plaintiff's are preempted. *See Gibson v. Prudential Ins. Co. of Am.,* 915 F.2d 414, 417 (9th Cir.1990) (finding state law fraud claim preempted under facts similar to the allegations in this case). This preemptive effect extends to claims against certain non-fiduciaries, including doctors like Defendant Sterling, who examined Plaintiff only for purposes of making a disability determination under the plan. *See id.* at 418 (applying preemption to non-fiduciaries, including examining doctors).

AFFIRMED.

RAWLINSON, Circuit Judge, concurring:

I concur in the result.

4. Plaintiff raises additional arguments for the first time in her reply brief, which we do not consider. *See Cedano–Viera v. Ashcroft,* 324 F.3d 1062, 1066 n. 5 (9th Cir.2003) (declining to consider new issues raised for the first time in a reply brief); *see also* Fed. R.App. P. 28(a)(9)(A).

