724 F.2d 823
 5 Employee Benefits Ca 1221
 Kent WINTERROWD, Office Administrator of the Juan De La Cruz
Farmworkers Pension Fund, Plaintiff-Appellee-Cross-Appellant,
v.
DAVID FREEDMAN AND COMPANY, INC., a California corporation;
Travertine Vineyard Associates, a partnership,
Defendants-Appellants-Cross-Appellees.
 Nos. 82-6114, 83-5528.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1983.
Decided Jan. 25, 1984.
 
 George C. Lazar, Scales, Ellsworth & Corbett, San Diego, Cal., for plaintiff-appellee-cross-appellant.
 David E. Smith, Indio, Cal., for defendants-appellants-cross-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before KENNEDY, SKOPIL, and PREGERSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 Here we decide whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001 et seq., applies to agricultural workers. We must also determine whether an award of punitive damages is proper under ERISA for an employer's wanton and willful failure to make required pension fund contributions. We hold that ERISA applies, that punitive damages may be awarded in some cases, and that the district court's award of punitive damages was within its discretion.
 
 
 2
 The employers, David Freedman & Co. and Travertine Vineyard Associates, are grape growers in California's Cochella Valley. In 1977 they entered into a collective bargaining agreement with UFW, the United Farm Workers of America. The employers agreed with UFW to make contributions to a pension fund for every hour an employee worked. Effective February 1, 1978, these contributions were to be fifteen cents per employee hour. The employers then found that UFW agreements with other growers provided for a contribution of only ten cents per employee hour, so in May 1978 the employers reduced their contribution to ten cents an hour, retroactive to February 1, 1978. This move apparently was intended to force UFW to renegotiate the provision.
 
 
 3
 Kent Winterrowd is the administrator of the pension fund, a multiemployer trust fund, which was to receive the employers' contributions. He brought suit in federal district court on behalf of the pension fund to collect the amount of underpayment. The pension fund alleged jurisdiction under ERISA, 29 U.S.C. Secs. 1132(e)(1) and (f), and sought damages, costs, attorneys' fees, and a punitive award. The district court found in favor of the fund and awarded mandatory interest (see 29 U.S.C. Sec. 1132(g)(2)(B) and (C) (Supp. IV 1980)), $70,044.36 in damages for unpaid contributions, and $75,000 in punitive damages, as well as costs and attorneys' fees. The employers appeal.
 
 
 4
 ERISA does not exempt agricultural workers from its coverage. The proposition is plain on the face of the statute and is apparent both from legislative history and subsequent administrative interpretation of the Act. ERISA covers an employee benefit plan under any "industry or activity affecting commerce." 29 U.S.C. Sec. 1003(a)(1). In defining this term, the statute provides:
 
 
 5
 The term "industry or activity affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, or the Railway Labor Act.
 
 
 6
 29 U.S.C. Sec. 1002(12).
 
 
 7
 The employers assert that the language "and includes any activity or industry 'affecting commerce' within the meaning of the Labor Management Relations Act" means that pension plans for agricultural employees are not covered, because agricultural employees are exempted from coverage under the Labor Management Relations Act of 1947. Employers suggest that any other interpretation renders the reference to the Labor Management Relations Act surplusage.
 
 
 8
 The employer's argument has no reasonable foundation in the history of the statute or its language. The first difficulty with the employers' argument is that it ignores the words "and includes," which appear in the quoted passage. This phrase is expansive, not limiting. See Highway & City Freight Drivers v. Gordon Transports, Inc., 576 F.2d 1285, 1289 (8th Cir.), cert. denied, 439 U.S. 1002, 99 S.Ct. 612, 58 L.Ed.2d 678 (1978) (when a statute uses the word "includes" rather than "means" in defining a term, it does not imply that items not listed fall outside the definition).
 
 
 9
 The statutory phrase "and includes" is intended to extend statutory coverage to the limit of congressional jurisdiction under the commerce clause. When Congress uses the term "activity affecting commerce," it is an expression of Congress' intent to regulate "within the full sweep of its constitutional authority." See Polish National Alliance v. NLRB, 322 U.S. 643, 647, 64 S.Ct. 1196, 1198, 88 L.Ed. 1509 (1944); Godwin v. Occupational Safety & Health Review Comm'n, 540 F.2d 1013, 1015 (9th Cir.1976). It is unquestionable that agriculture is an activity "affecting commerce." Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942).
 
 
 10
 There is a second difficulty with the employers' interpretation. Under the Labor Management Relations Act, agriculture is not excluded under the provision extending jurisdiction to activities affecting commerce. Instead, agricultural employees are excluded under the definition of "employees" covered by that Act. See 29 U.S.C. Sec. 152(3). In contrast, ERISA broadly defines "employees" to mean "any individual employed by an employer." 29 U.S.C. Sec. 1002(6). The exemptions from ERISA's coverage are also spelled out in detail. See 29 U.S.C. Sec. 1003(b) (excluding governmental plans, church plans, workers compensations plans, extraterritorial nonresident alien plans, and unfunded excess benefit plans). If Congress had intended to exclude agricultural workers' pension plans from coverage under ERISA, it could have done so explicitly.
 
 
 11
 The Act's legislative history supports a conclusion that ERISA applies to agricultural workers. See S.Rep. No. 93-127, 93d Cong., 1st Sess. 18 (1973), reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4838, 4854 (coverage under ERISA should be construed "liberally" to provide "maximum" protections for workers, and the "exemptions should be confined to their narrow purpose."). Administrative interpretation also suggests that agricultural workers are covered. In construing statutes, courts may look not only to the language and the legislative history but also to the interpretation given by the administering agency. Turner v. Prod, 707 F.2d 1109, 1114 (9th Cir.1983). The agency's interpretation, "while not binding, is entitled to substantial deference by a court." Id. at 1115. Here, along with the Department of Treasury, the Department of Labor is charged with enforcing ERISA, and there is evidence in the record that it has considered ERISA applicable to this pension fund for agricultural workers. Under ERISA the district court had jurisdiction over this suit, and it was correct in holding that the employers' failure to contribute the agreed upon amount to a pension fund covering agricultural workers was an ERISA violation.
 
 
 12
 The district court originally granted punitive damages "as a matter of California and federal law," finding that the employers' unilateral reduction of contributions was "wilful, wanton, and malicious" conduct. In ruling on a motion to modify the judgment, however, the district court concluded that punitive damages were not available under ERISA, but that the punitive award was proper under state law.
 
 
 13
 The contentions of the parties respecting whether state or federal law determines the applicability of punitive damages in a suit based on ERISA have been resolved by our decision in Russell v. Massachusetts Mutual Life Ins. Co., 722 F.2d 482 (9th Cir.1983). ERISA preempts state law, and this preemption extends to the question of availability and the measure of punitive damages, questions determined solely as a matter of federal law. Title 29 U.S.C. Sec. 1144(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." We concluded in Russell that this provision preempts state law claims. Id. at 487.
 
 
 14
 The Eighth Circuit, in dictum, expressed doubt that punitive damages are available under ERISA. Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1216 (8th Cir.), cert. denied, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981). There, however, the court held only that an award of punitive damages was inappropriate in an interference with contract claim. Id. We have held that Congress intended to permit punitive damages in appropriate cases, and that a punitive award is appropriate where a fiduciary duty has been breached. Russell at 490-93.
 
 
 15
 Here, the pension fund has an even more compelling justification for a punitive award than that we addressed in Russell. ERISA was amended in 1980 to direct courts deciding suits for recovery of unpaid employer contributions to grant "such other legal or equitable relief as the court deems appropriate" in addition to the mandatory costs, interest, and attorneys' fee awards of 29 U.S.C. Sec. 1132(g)(2) (Supp. IV 1980). See 29 U.S.C. Sec. 1132(g)(2)(E) (Supp. IV 1980). This statutory language suggests the discretionary availability of punitive damages when a suit is brought to recover unpaid employer contributions.
 
 
 16
 In Russell we held that a fiduciary who acted with "actual malice or wanton indifference to the rights of a participant or beneficiary" could be liable for punitive damages. Id. at 492. The district court here found that employers' refusal to make promised contributions was "wilful, wanton, and malicious." This conclusion justifies upholding the present punitive award. The evidence supports the underlying finding, for it permits the inference that employers intended to coerce renegotiation of the collective bargaining agreement through unilaterally reducing contributions. Once the factual predicate for aggravated conduct is established, the imposition of punitive damages is discretionary with the trier of fact. The allowance of such damage:
 
 
 17
 inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.
 
 
 18
 Fisher v. Volz, 496 F.2d 333, 347 (3d Cir.1974) (quoting Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir.1970)).
 
 
 19
 In upholding this award, however, we note, as we did in Russell, that such awards should be made "in only very limited circumstances." 722 F.2d at 492. This is especially true when, as here, the mandatory double interest provisions of ERISA, 29 U.S.C. Sec. 1132(g)(2)(B) and (C) (Supp. IV 1980), fulfill most of the usual functions of punitive damages in deterring misconduct and ensuring compliance. Nevertheless, the district court did not abuse its discretion in awarding punitive damages in the circumstances of this case.
 
 
 20
 AFFIRMED.