ECKERT COLD STORAGE,
INC., et al., Plaintiffs,

v.

Douglas BEHL, et al., Defendants.

CIV–S–92–1781 DFL–PAN.

United States District Court,
E.D. California.

May 3, 1996.

Howard M. Hoffman, Sacramento, CA, for Eckert Cold Storage, et al.

John L. Viola, Adams, Duque & Hazeltine, Los Angeles, CA, Thomas G. Redmon, Matthew W. Powell, Wilke, Fleury, Hoffelt, Gould & Birney, Sacramento, CA, for Security Connecticut and Bank of Edwardsville.

### AMENDED MEMORANDUM OF OPINION AND ORDER [1]

LEVI, District Judge.

Plaintiffs move for leave to file a second amended complaint to add a RICO cause of action. Defendants Security Connecticut Life Insurance Company and the Bank of Edwardsville together move for summary adjudication on the issue of damages. Defendant Grant Thornton also moves for summary adjudication on the issue of damages.[2]

---

1. Section II of this order has been amended upon reconsideration.

2. Defendant Douglas Behl also moved for summary adjudication on the issue of damages. However, at the hearing on the motion counsel represented that plaintiffs had reached a settlement with Behl that would dismiss him from the action.

3. Once a party demonstrates good cause to amend under Rule 16(b), the court next must

### I.

Plaintiffs move for leave to add a sixth cause of action to their complaint, alleging violations of the RICO statute by defendants Security Connecticut Life Insurance Company ("Security") and the Bank of Edwardsville ("the Bank"). Both plaintiffs and defendants would have the court apply the standards of Rule 15(a) to determine whether the proposed amendment should be allowed. Under Rule 15(a), a party may amend its pleadings only by leave of court or by written consent of the adverse party, and leave "shall be freely given when justice so requires." Leave to amend should be granted under Rule 15(a) unless the amendment would cause prejudice to the opposing party, is sought in bad faith, is futile or creates undue delay. *Moore v. Kayport Package Express,* 885 F.2d 531, 538 (9th Cir.1989).

However, the standards of Rule 15 do not control the consideration of plaintiffs' motion. In August of 1994 the court issued an order establishing that no further amendments would be allowed absent leave of court, "good cause having been shown." Upon the expiration of the deadline established in a Rule 16 scheduling order, a party seeking to amend its pleadings must satisfy the standards of Rule 16 before the amendment will be allowed. *Johnson v. Mammoth Recreations,* 975 F.2d 604, 607–08 (9th Cir. 1992); *see also Janicki Logging Co. v. Mateer,* 42 F.3d 561, 566 (9th Cir.1994); *Riofrio Anda v. Ralston Purina,* 959 F.2d 1149, 1154–55 (1st Cir.1992). Thus, consideration of plaintiffs' ability to amend the complaint in governed by Rule 16(b), not Rule 15(a).[3]

Rule 16 provides that the scheduling order "shall not be modified except upon a showing of good cause and by leave of the

---

apply the standards of Rule 15(a) to determine whether the proposed amendment should be allowed. *See e.g., Marcum v. Zimmer,* 163 F.R.D. 250 (S.D.W.Va.1995); *Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C.1987). Because the court finds that plaintiffs have failed to demonstrate good cause, it need not consider whether the proposed amendment would be proper under Rule 15(a).

district judge . . ." Fed.R.Civ.P. 16(b); *Johnson*, 975 F.2d at 608. This rule was designed to allow the district court to manage its calendar and to facilitate more efficient disposition of cases by settlement or by trial. *Johnson*, 975 F.2d at 610–11; *see* Rule 16 Advisory Committee Notes (1983 Amendment). To permit a party to disregard a Rule 16 order by an appeal to the standards of Rule 15 would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson*, 975 F.2d at 610–11; *see also Riofrio*, 959 F.2d at 1155.

■ The focus of the Rule 16 "good cause" inquiry is on the on the moving party's diligence, or lack thereof, in seeking amendment. *Johnson*, 975 F.2d at 608–09. The district court may allow a post-deadline amendment if the deadline could not reasonably have been met despite the diligence of the moving party. *Id.* If the moving party was not diligent in seeking amendment, leave to amend should be denied. *Id.*.

■ Plaintiffs' motion for leave to add a RICO cause of action comes nearly one year after the expiration of the amendment deadline. By way of explanation, plaintiffs' counsel asserted at oral argument that he did not receive the information he needed to allege the RICO claim until sometime between December 1994 and March 1995. However, plaintiffs fail to specify what new and previously unavailable information they obtained that leads them to believe that a RICO cause of action is now appropriate. *See* Pl.'s P & A at 2:27–3:1; Pl.'s Reply at 8:14, 10:11. Moreover, plaintiffs have not adequately explained why they waited up to seven months after receiving the necessary documents before filing the motion to amend. Therefore, the court finds that plaintiffs have failed to demonstrate diligence in seeking amendment.

The addition of the RICO claim at this late date threatens the sort of disruption that Rule 16(b) was designed to prevent. Plaintiffs have not demonstrated diligence in pursuing the RICO claim, and thus have failed to show good cause for allowing this tardy and potentially disruptive amendment. The motion for leave to file a second amended complaint is denied.

## II.

■ Plaintiffs allege that defendant Grant Thornton ("Grant") rendered inaccurate advice when it confirmed Behl's representations regarding the tax benefits of the TTC program. Plaintiffs seek recovery from Grant of more than $1,000,000 in back taxes and $500,000 in interest paid to the I.R.S. and Franchise Tax Board when the TTC deductions were disallowed. Grant now moves for summary adjudication on the issue of damages, contending that as a matter of law Grant cannot be liable to plaintiffs for their back taxes and interest. Because plaintiffs proceed under a theory of common-law misrepresentation,[4] California law will determine whether tax damages may be recovered. *See Berg v. First State Insurance Co.*, 915 F.2d 460, 464–67 (9th Cir.1990).

### A. Back Taxes

■ California Civil Code section 3333 sets forth a broad measure of damages generally recoverable in tort actions: "the measure of damages . . . is the amount which will compensate for all the detriment proximately caused" by the defendant's tortious conduct.[5] Plaintiffs argue that under section 3333 they are entitled to recover "benefit of the bargain" damages—an amount equal to the difference between the actual value of what

---

4. Under the order of November 30, 1993 plaintiffs may proceed with their pendent state law claims for misrepresentation of tax benefits.

5. Plaintiffs alternatively seek recovery under Civil Code section 3343, which sets forth the measure of damages for plaintiffs "defrauded in the purchase, sale or exchange of property." However, it appears this provision applies only to actions between vendors and vendees of property, or their agents; section 3333 provides the measure of recovery in actions brought by purchasers against third-party advisors for negligent misrepresentation that induces the purchaser to enter the transaction. *See Gagne v. Bertran*, 43 Cal.2d 481, 490, 275 P.2d 15 (1954); *Nathanson v. Murphy*, 132 Cal.App.2d 363, 371–72, 282 P.2d 174 (1 Dist.1955); *Lund v. Albrecht*, 936 F.2d 459, 464 (9th Cir.1991).

they received and the value of what they expected to receive in light of Grant's representations. In the circumstances here, benefit of the bargain damages would give plaintiffs the monetary value of the illusory tax benefits they expected to receive. Plaintiffs contend that such broad recovery is permissible under section 3333 because Grant acted as a fiduciary when it advised them regarding the tax consequences of the TTC investment.

 Plaintiffs' position is not supported by the main line of case authority. Under this precedent, section 3333 does not provide for benefit of the bargain recovery, even if Grant acted as plaintiffs' fiduciary. *See Alliance Mortgage Company v. Rothwell,* 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 367, 900 P.2d 601, 616 (1995); *Gray v. Don Miller & Associates,* 35 Cal.3d 498, 198 Cal.Rptr. 551, 554, 674 P.2d 253, 255, (1984); *Kenly v. Ukegawa,* 16 Cal.App.4th 49, 19 Cal.Rptr.2d 771, 774 (4 Dist.1993); *Christiansen v. Roddy,* 186 Cal.App.3d 780, 231 Cal.Rptr. 72, 78 (5 Dist.1986); *but see Salahutdin v. Valley of California, Inc.,* 24 Cal.App.4th 555, 29 Cal. Rptr.2d 463, 469 (1 Dist.1994); *Pepitone v. Russo,* 64 Cal.App.3d 685, 134 Cal.Rptr. 709, 711 (2 Dist.1975).[6] Rather, plaintiffs' recovery must be limited to the losses proximately caused by Grant's alleged misrepresentations: the damages awarded should place plaintiffs in the position they would have occupied had the misrepresentations not occurred. *Gray,* 198 Cal.Rptr. at 554, 674 P.2d at 255; *Kenly,* 19 Cal.Rptr.2d at 774.

██ Although plaintiffs are not entitled to expectation damages, it does not follow, as Grant would have it, that the tax liability incurred by plaintiffs is not recoverable under any set of circumstances. Under § 3333, plaintiffs may be entitled to damages due to the tax liability, if they can prove that this liability was caused by Grant's negligent or fraudulent advice and would not otherwise have been incurred. To make this showing plaintiffs must prove that they would have sheltered their income in an alternative available investment. Plaintiffs may not be able to recoup the entire amount of the tax liability given that the TTC program apparently promised fanciful tax benefits like no other shelter. But to the extent that plaintiffs would have avoided some of the tax liability through investment in shelters that were available to them at the time, they may recover as damages a portion of the tax liability.

Grant concedes that an accountant "causes" its client to incur tax liability when its advice induces the client to earn taxable income. *See, e.g., Deloitte, Haskins & Sells v. Green,* 198 Ga.App. 849, 403 S.E.2d 818, 819–20 (1991) (accountant negligently advised plaintiff that sale of business would result in $30,000 tax liability when actual tax liability was $650,000; accountant may be liable for tax assessment because but for advice plaintiff would not have sold business); *Bancroft v. Indemnity Insurance Co.,* 203 F.Supp. 49 (W.D.La.1962) (accountant negligently advised client that stock sale will not yield taxable income; accountant liable for tax because client would not have sold shares but for negligent advice). However, Grant argues, advice on how to shelter income cannot "cause" tax liability because that liability arises when the income is earned and not when the taxpayer fails to shelter it.

Grant's argument raises semantics above economic reality; if income that is presumptively taxable when earned may be invested in such a way as to avoid tax liability on that income, tax liability does not attach at the moment the income is earned, but rather when it is earned but not sheltered. There is no principled basis for distinguishing between negligent advice that induces a taxpayer to earn taxable income, and negligent advice that induces a taxpayer to forego sheltering income from tax liability. In either case, the accountant "causes" its client's tax liability, and to award the client tax damages is only to place the client back into the position the client occupied prior to the ac-

---

**6.** Plaintiffs argue that the California Supreme Court in *Alliance* left open the question whether benefit of the bargain damages were available in cases of *intentional* fiduciary fraud. However, the *Alliance* court merely declined to address the question, *see Alliance,* 44 Cal.Rptr.2d at 367, 900 P.2d at 616, and there is no authority for allowing different measures of compensatory damages for intentional fraud and constructive fraud. *See Salahutdin,* 29 Cal.Rptr.2d at 469.

countant's rendering of negligent advice. *See Vogt v. Abish*, 663 F.Supp. 321 (S.D.N.Y. 1987) (accountant failed to inform client of $15,000 capital loss, causing client to forego sheltering $15,000 capital gain in subsequent years; accountant liable for taxes on $15,000 capital gains); *Jewish Hospital of St. Louis v. Boatmen's National Bank*, 261 Ill.App.3d 750, 199 Ill.Dec. 276, 288, 633 N.E.2d 1267, 1279 (1994) (accountant may be liable for estate's tax assessment when it negligently failed to render advice that could have led to tax avoidance).[7] The exclusion of tax liability from damages is not supported by the broad language of § 3333 and would confer a broad immunity on accountants, lawyers and others who give tax advice; such immunity must come from the legislature if it is to come at all.

■■■ In order for plaintiffs to prove their claim under a theory of alternative investment, they must establish with "reasonable certainty" that other investments available at the time would have provided successful tax shelter, and that they would have placed their money in those investments had Grant not made the misrepresentations. *See Christiansen*, 231 Cal.Rptr. at 78. Because inquiring into tax consequences of particular investments can be a "complex and speculative" task, *see DePalma v. Westland Software House*, 225 Cal.App.3d 1534, 276 Cal. Rptr. 214, 220 (2 Dist.1990), plaintiffs' burden is substantial and undoubtedly requires expert testimony in addition to that of plaintiffs.

To this point plaintiffs have failed to carry their burden.[8] However, in light of the settlement approach designed by the magistrate judge and because the focus of Grant's motion was on plaintiffs' entitlement as a matter of law to tax damages, it would be inappropriate to grant judgment at this time on the ground that plaintiffs have not adequately supported their alternative investment claim. Accordingly, Grant's motion for summary judgment will be denied.

### B. Interest

■■■ In addition to back taxes, plaintiffs seek recovery of the interest they paid when the IRS disallowed their tax deductions for the TTC payments. However, interest paid to the I.R.S. represents a payment for the plaintiffs' use of the tax money during the period after the taxes came due and before they were paid; as such, to the extent that the I.R.S. charges the market rate, interest is not a proper element of damages. *See Ackerman v. Price Waterhouse*, 156 Misc.2d 865, 591 N.Y.S.2d 936, 946 (N.Y.App.Div. 1992) ("although an issue may be raised regarding penalty interest, the typical interest paid to the IRS is not damages ... but ... a payment to the IRS for ... use of the money during the time when [the taxpayer] was not entitled to it") (quotations omitted), *rev'd on other grounds* 84 N.Y.2d 535, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994); *see also Stone*, 8 F.3d at 1093; *Freschi*, 767 F.2d at 1051; *Alpert*, 559 N.Y.S.2d at 315; *In re Securities Group 1980*, 124 B.R. at 903.[9]

---

7. The court recognizes that several other courts have reached the opposite conclusion regarding the availability of tax damages in fraud cases. *See Alpert v. Shea Gould Climenko & Casey*, 160 A.D.2d 67, 559 N.Y.S.2d 312, 315 (1 Dept.1990); *Stone v. Kirk*, 8 F.3d 1079, 1093 (6th Cir.1993); *Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1051 (2nd Cir.1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3325, 92 L.Ed.2d 731 *and modified on other grounds*, 800 F.2d 305 (2nd Cir.1986); *In re Securities Group 1980*, 124 B.R. 875, 902–03 (Bkrtcy M.D.Fla.1991). However, none of these cases is controlling, and in each the court reached its conclusion without much analysis. To the extent that these cases hold that tax damages are not available in fraud cases, the court elects not to follow them.

8. It is not sufficient that plaintiffs show that they "would have sought to invest the funds in a manner in which [they] would obtain similar tax deductions." *See* Thompson Dec. at 2–3. Nor is it sufficient that plaintiffs merely assert that "there was a panoply of options available to [them] that would have yielded the identical tax deduction." *See* Pl.'s Rec.Mot. at 5. Rather, plaintiffs must prove, most likely with expert testimony, that other investments were available at the time and would have yielded the desired tax results.

9. Plaintiffs argue that they did not have use of the tax money because it was invested in the TTC program. However, plaintiffs' investment of the tax money in the TTC program constitutes "use" of that money.

### III.

Defendants Security and the Bank also move for summary adjudication on the issue of plaintiffs' entitlement to certain elements of damages.[10] The moving defendants argue that plaintiffs' only viable damages claim against them is for plan benefits under 29 U.S.C. § 1132(a)(1)(B).

#### A. Tax Damages

■ Security and the Bank argue that plaintiffs cannot recover from them for the back taxes and interest paid when the I.R.S. disallowed the TTC deductions. Plaintiffs concede that the tax damages are not recoverable under ERISA. Pl.'s Opp. at 4. However, plaintiffs seek to recover their tax damages from Security under their fourth cause of action, which alleges that Douglas Behl misrepresented the tax benefits of the TTC program. Plaintiffs contend that Security is liable under this cause of action on a theory of respondeat superior because Behl acted as Security's agent when he made the misrepresentations.

In a clarifying order of November 1993, the court allowed plaintiffs to go forward with their state law misrepresentation claim under the court's pendent jurisdiction. The court also instructed plaintiffs to "specify which of the named defendants are sued on which causes of action." Order of Nov. 30 at 3. In response, plaintiffs filed a "Clarification of Claim" on December 7, 1993. Plaintiffs therein stated that the fourth cause of action "is directed against defendant Douglas Behl," and made no mention that Security was involved in this cause of action. Pls.' Clarification of Claim at 2. Moreover, plaintiffs stated that paragraph 56 of the complaint, the only place where Security is mentioned in the fourth cause of action, should be removed from the fourth cause of action and read in sequence after paragraph 14 of the complaint. *Id.*

In light of plaintiffs' previous representations, the court finds that they cannot now sue Security under their fourth cause of action on an entirely new theory of recovery. Accordingly, plaintiffs cannot recover their tax damages from Security or the Bank under ERISA or under their common law misrepresentation claim.

#### B. Punitive Damages

■ ■ The six civil enforcement provisions found at 29 U.S.C. § 1132(a) provide the exclusive remedies to redress ERISA violations. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987); *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). Of these six provisions, only two—sections 1132(a)(2) and 1132(a)(3)—could conceivably authorize an award of punitive damages against Security and the Bank.[11] However, punitive damages awards are foreclosed as a matter of law under either provision.

■ Section 1132(a)(3) authorizes civil actions to enjoin violations of ERISA and to obtain "other appropriate equitable relief" to redress violations or enforce ERISA provisions. 29 U.S.C. § 1132(a)(3). It is now well-established that punitive damages are not available under section 1132(a)(3). *Mertens v. Hewitt Associates,* 508 U.S. 248, 256, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993) ("equitable relief" under section 1132(a)(3) limited to "traditional" equitable remedies, and does not include punitive damages).

■ Section 1132(a)(2) authorizes civil suits for relief under section 1109. Section 1109 provides that a fiduciary who breaches its duties to an ERISA plan "shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a).

The Supreme Court has held that an individual beneficiary may not recover extracontractual damages, such as punitive damages,

---

10. Included in this motion is the moving defendants' argument that plaintiffs have no right to a jury trial for their ERISA claims. Without deciding whether plaintiffs are so entitled, the court notes that plaintiffs' counsel conceded the point at the hearing on the motion. Rptr's Tr. at 4:23–5:6.

11. Plaintiffs fail to specify under what provision they seek to recover punitive damages from Security and the Bank.

under section 1109. *Russell,* 473 U.S. at 147, 105 S.Ct. at 3093. However, the Court explicitly left open the question whether punitive damages might be available under section 1132(a)(2) when, as here, the plan itself sues for plan injuries. *Id.* at 144 n. 12, 105 S.Ct. at 3091 n. 12.

Plaintiffs cite two Ninth Circuit cases in support of their argument that the Eckert plan is entitled to punitive damages under ERISA: *Kuntz v. Reese,* 760 F.2d 926, 938 (9th Cir.1985), *withdrawn and vacated on other grounds,* 785 F.2d 1410 (1986); and *Winterrowd v. David Freedman & Co.,* 724 F.2d 823, 826 (9th Cir.1984). However, *Kuntz* and *Winterrowd* are not good authority for the proposition that ERISA plans may recover punitive damages under section 1132(a)(2).

██ In *Winterrowd,* the court held that punitive damages are available under section 1132(g)(2), which authorizes "legal or equitable relief" when an employer fails to make contributions according to the terms of the plan. *Winterrowd,* 724 F.2d at 825–26. The court did not address whether punitive damages were available under section 1109(a), which authorizes "equitable or remedial relief" to redress fiduciary breaches. While it may be the case that punitive damages are an appropriate form of "legal" relief under section 1132(g)(2)(E), it does not follow that they are authorized under a provision allowing "remedial" relief.[12] *Cf. Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) ("legal" relief different from "remedial" relief).

The *Winterrowd* court did make the more general statement that "a punitive award is appropriate [under ERISA] where a fiduciary duty has been breached." *Winterrowd,* 724 F.2d at 826. As support for this proposition the court relied explicitly and exclusively on the Ninth Circuit's decision in *Russell v. Massachusetts Mutual Life Ins. Co.,* 722 F.2d 482 (9th Cir.1983), in which the court

held that beneficiaries could sue fiduciaries for punitive damages under section 1109(a). *Winterrowd,* 724 F.2d at 826 (citing *Russell,* 722 F.2d at 490–93). However, after *Winterrowd* was decided the Ninth Circuit's *Russell* decision was reversed by the Supreme Court in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96, and thus no longer supports the conclusion that punitive damages are available under ERISA.

In *Kuntz, supra,* the court held that Congress intended to permit punitive damages awards when a fiduciary breached its duties to the plan. *Kuntz,* 760 F.2d at 938. However, the Ninth Circuit has since withdrawn and vacated that opinion, albeit on grounds unrelated to the punitive damages issue. *See Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986). Further, in holding that punitive damages are available under ERISA, the *Kuntz* court relied upon *Winterrowd* and on the Ninth Circuit's decision in *Russell,* neither of which remains good authority for that proposition.[13] *Kuntz,* 760 F.2d at 938. *See Mertens v. Hewitt Associates,* 508 U.S. 248, 257 n. 7, 113 S.Ct. 2063, 2069 n. 7, 124 L.Ed.2d 161 (1993) (suggesting that *Kuntz* is no longer good authority after the Supreme Court's decision in *Russell* ).

In light of the absence of Ninth Circuit authority on the availability of punitive damages under section 1109(a), the court elects to follow the Fifth Circuit's decision in *Sommers Drug Stores v. Corrigan Enterprises,* 793 F.2d 1456 (5th Cir.1986). In *Sommers,* the court considered the specific question presented by this motion: whether a plan may recover punitive damages under section 1109(a) for breaches by plan fiduciaries. *Id.* at 1463. The court concluded that neither the language of the provision, nor the legislative history of ERISA support the view that punitive damages should be allowed under section 1109(a). *Id.*

---

**12.** Punitive damages are most definitely not available as a form of "equitable relief" under either section 1132(g)(2)(E) or 1109(a). *Mertens v. Hewitt Associates,* 508 U.S. 248, 256, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993).

**13.** Because *Kuntz* was decided in May 1985, the court did not have the benefit of the Supreme Court's decision in *Russell,* which was handed down in June 1985.

First, the court noted that "equitable or remedial relief" generally includes the kinds of relief available "to restore the plaintiff's losses or protect him from future harm." *Id.* Punitive damages do not fall within this category because, "rather than restoring the plaintiff's losses and protecting him from future harm, punitive damages are designed to punish the wrongdoer and deter others from similar misconduct." *Id.* Second, the court reasoned that Congress intended to import into ERISA the fiduciary principles of the law of trusts, and that the law of trusts does not permit recovery of punitive damages for breach of fiduciary duty. *Id.* at 1463–64 (with citations); *see also Mertens,* 508 U.S. at 270 and n. 5, 113 S.Ct. at 2076 and n. 5 (dissenting opinion of Justice White). Therefore, the court concluded, Congress did not intend to allow plans to recover punitive damages under section 1109(a) for breach of fiduciary duty. *Sommers,* 793 F.2d at 1464.

The court is persuaded by the reasoning of *Sommers,* and therefore finds that plaintiffs' ERISA plan may not recover punitive damages under section 1132(a)(2) and 1109(a) for the defendants' alleged breaches of fiduciary duty. Because punitive awards are foreclosed as a matter of law under both section 1132(a)(2) and 1132(a)(3), plaintiffs may not recover punitive damages under ERISA from Security or the Bank.

### C. Plan Losses

Section 1132(a)(2) authorizes plan beneficiaries to sue to enforce section 1109. Section 1109 provides that plan fiduciaries who breach their duties to the plan "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a). In the first cause of action plaintiffs ask that Security and the Bank be required to "make good to the plan all losses resulting from their conduct." Compl. at ¶ 47.

For purposes of this motion, Security and the Bank do not dispute that they were fiduciaries to plaintiffs' ERISA plan, or that they breached their fiduciary duties to the plan. Def.s' P & A at 6 and n. 7. Further, it appears there is a material dispute as to whether the plaintiffs' plan suffered losses as a result of the defendants' conduct. Con-trary to the position taken in their briefs, it appears defendants no longer contend otherwise. See Rptr's Tr. at 13:2–13:11.

Consequently, the court cannot conclude as a matter of law that plaintiffs are unable to recover under section 1132(a)(2) and 1109(a) for plan losses occasioned by the moving defendants' alleged breaches. Summary adjudication is therefore inappropriate as to plaintiffs' entitlement to this element of damages.

### IV.

For the forgoing reasons, the court orders the following:

1. Plaintiffs' motion for leave to file a second amended complaint is DENIED;

2. Grant's motion for summary adjudication on the issue of the availability of back taxes as damages is DENIED;

3. Grant's motion for summary adjudication on the issue of the availability of interest as damages is GRANTED to the extent that the interest charged was equal to the market rate;

4. The motion for summary adjudication by Security and the Bank is GRANTED as to plaintiffs' claim for tax damages and punitive damages; and

5. The motion for summary adjudication by Security and the Bank is DENIED as to plaintiffs' claim for recovery of plan losses.

IT IS SO ORDERED.